**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Alicia P.,[1]                                         Case No. 25-cv-3168 (LMP/DJF)

                    Plaintiff,

v.

                                            **REPORT AND RECOMMENDATION**

Frank Bisignano,
*Commissioner of Social Security*,

                    Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alicia P. ("Plaintiff") seeks judicial review of the

Commissioner of Social Security's ("Commissioner") December 20, 2023 decision denying her

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  This matter is

before the Court on the parties' briefs.  The undersigned considers the briefs pursuant to 28 U.S.C.

§ 636(b)(1)(B) and Local Rule 72.1.  Plaintiff argues the decision was erroneous because the

Administrative Law Judge ("ALJ") failed to comply with the Appeals Council's directions on

remand and because it was based on flawed testimony from the vocational expert ("VE") who

testified at Plaintiff's hearing regarding representative occupations Plaintiff can perform.  Because

the Court does not have jurisdiction to review whether the ALJ complied with the Appeals

Council's remand order and substantial evidence otherwise supports the decision, the Court

recommends Plaintiff's request for relief (ECF No. 13) be denied, Defendant's request for relief

(ECF No. 17) be granted, and this matter be dismissed with prejudice.

---

[1] This District has adopted a policy of using only the first name and last initial of any
nongovernmental parties in court filings in Social Security matters.

**BACKGROUND**

I.    **Regulatory Background**

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).[2]  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled.  20 C.F.R. § 416.920(a)(4).  At step one, the claimant must establish that she is not engaged in any "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner must find the claimant is disabled if she has satisfied the first two steps and she has an impairment that meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P,

---

[2] The provisions of Title II (DIB) mirror the provisions of Title XVI (SSI) of the Social Security Act.  For simplicity, the Court cites only to the statutory provisions and regulations under Title XVI.

App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## II.   Procedural History

### A.   The 2021 Decision

Plaintiff applied for DIB on March 8, 2019, with an alleged disability onset date of April 6, 2018. (Soc. Sec. Admin. R. (hereinafter "R.") 173-174.)[4] At that time, she was 26 years old and had previously worked as a cashier, dietary aide, food preparer, and security worker. (R. 173, 196.) Plaintiff alleged she was disabled due to post-traumatic stress disorder ("PTSD"), mood disorder, "authority figure conflict", learning disability, depression, anxiety, severe fibromyalgia, functional neurological disorder, and "allergic reaction to the immune system". (R. 194.)

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

[4] The Social Security administrative record (R.) is filed at ECF No. 8. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF page numbers in citing to the Administrative Record. All other record citations refer to ECF docket and page numbers.

Plaintiff's application was denied initially (R. 80-81), and on reconsideration (R. 96-97). Plaintiff requested a hearing with an ALJ, and the ALJ issued a decision on January 14, 2021 ("2021 Decision") (R. 14-33) that denied Plaintiff's claim and found her "not disabled" from her alleged disability onset date through the date of the decision (R. 28).

The 2021 Decision turned, in relevant part, on the inclusion of a limitation in Plaintiff's RFC at step four of the sequential analysis to one-to-two step instructions ("one-to-two step limitation"). (R. 23, "She is able to understand, remember and carry out one to two step instructions on a sustained basis over a normal workday or workweek with adequate persistence and pace.") At step five, based on testimony from a VE, the ALJ found there are jobs in significant numbers in the national economy that a person with Plaintiff's RFC can perform, including dishwasher, hand packager, and laundry worker. (R. 27.)

Plaintiff appealed the 2021 Decision to the Appeals Council on February 10 and March 12, 2021. (R. 165-172.) The Appeals Council denied further review on March 9, 2022, such that the 2021 Decision became the Commissioner's final decision as of that date. (R. 1-5.)

## B.      District Court Remand

After the Commissioner denied Plaintiff's DIB application, Plaintiff filed suit in the U.S. District Court for the District of Minnesota. *Alicia P. v. Kijakazi*, No. 22-cv-1217 (PJS/DJF). Before the Court could address Plaintiff's claim on the merits, the parties filed a joint stipulation to remand it to the Commissioner for further administrative action pursuant to sentence 4 of 42 U.S.C. § 405(g). *Id.* (ECF No. 20). The District Judge approved the stipulation and filed a remand order on December 8, 2022. *Id.* (ECF No. 22).

## C.      Second Application

While awaiting the Court's decision, Plaintiff filed a subsequent application for DIB and

SSI on June 27, 2022, with an alleged disability onset date of January 21, 2021. (R. 1030.) In this second application, Plaintiff alleged she was disabled due to fibromyalgia, functional neurological disorder, intractable headaches, tendon injury, prescribed wheelchair, unspecified cognitive disorder, anxiety, borderline personality disorder, PTSD, and major depressive disorder. (R. 1053.)

### D.      Appeals Council Remand and Consolidation

On March 6, 2023, following the District Court's remand of Plaintiff's initial DIB application to the Commissioner, the Appeals Council issued an order vacating the 2021 Decision and remanding the application to the ALJ for further administrative action. (R. 852-53.) The order explained that an unaddressed conflict existed between the VE's testimony and the Dictionary of Occupational Titles ("DOT") and instructed the ALJ on remand to, "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base". (R. 853.) More specifically, the order explained that, "[i]t is unclear whether an individual restricted to one-to-two step instructions is capable of performing the cited step 5 jobs, and the ALJ did not ask the vocational expert to provide additional testimony on this matter." (*Id*.)

The Appeals Council's order directed the ALJ to resolve any conflicts between the VE's testimony and the DOT on remand. (*Id*.) The order also consolidated Plaintiff's original DIB application with her subsequent DIB and SSI application and directed the ALJ to issue "a new decision on the consolidated claims." (*Id*.)

### E.       The 2023 Decision

#### 1.       Hearing Testimony

On July 13, 2023, the ALJ held a hearing on Plaintiff's consolidated application. (R. 741-781.) An attorney represented Plaintiff and presented argument, and Plaintiff testified. (*Id*.) Plaintiff offered testimony regarding her current living situation, employment history, symptoms, cognitive limitations, ADLs, medical treatment, and education. (*Id*.) The ALJ continued the hearing to obtain VE testimony (R. 780) and conducted a second hearing on September 7, 2023 (R. 714-740). During the second hearing, the Plaintiff testified regarding her education and employment history. (R. 718-21.)

The ALJ then solicited vocational testimony from the VE. The ALJ omitted any one-to-two step limitation from the hypothetical she presented to the VE and instead stated that the hypothetical individual is "able to understand, remember and carry out simple tasks". (R. 722.) Based on that hypothetical, the VE testified there are jobs in significant numbers in the national economy that a person with Plaintiff's limitations can perform, including "copy examiner", "document preparer", and "touch up inspector". (R. 725.) Plaintiff's attorney then asked the VE to consider the impact that adding a one-to-two step limitation to the hypothetical would have on his opinion. (R. 727.) The VE replied, "None of the jobs that I identified were one and two step. Even though they were unskilled, they were more than one to two step jobs." (*Id*.)

#### 2.       ALJ Decision

The ALJ issued her decision on the consolidated application on December 20, 2023 ("2023 Decision"). (R. 676-713.) The 2023 Decision took into account the additional testimony from Plaintiff and the VE (R. 714-81), as well as new records, including medical records, which did not

exist and could not have been considered when the ALJ issued the 2021 Decision. (*See* R. 704-13; *see also* R. 681, stating the ALJ admitted evidence into the record that Plaintiff submitted within five days before the hearing date.)

The 2023 Decision acknowledged the complicated procedural history preceding it. (R. 679-681.)   The ALJ interpreted the Appeals Council's order as directing her to, "obtain supplemental evidence from a vocational expert to clarify the effect of the limitations assessed on the pertinent occupational base, including posing hypothetical questions to the expert that reflect the specific residual functional capacity established by *the record as a whole*". (R. 680, emphasis added.)  The ALJ noted the Appeals Council's concern that it was unclear whether the one-to-two step RFC limitation assessed in the 2021 Decision was consistent with the occupations recommended by the VE whose testimony supported that decision. (*Id*.)  However, based on the augmented record, the 2023 Decision assessed a revised RFC that did not contain a one-to-two step limitation. (*Id*.)  Instead, the revised RFC assessed the following cognitive and mental health restrictions:

> The claimant is able to understand, remember and carry out simple tasks. The claimant is able to have occasional interaction with the public and coworkers. The claimant can manage occasional changes in a routine work setting.

(R. 689.)  The ALJ thus concluded that, "to the extent that the Appeals Council's [remand] Order pertain[ed] to the identified potential conflict between the previously identified limitation and the DOT, the directions in the Order are moot." (R. 680.)  ALJ further explained that she followed the Appeals Council's general direction to obtain supplemental evidence from a VE to clarify the effect of the revised RFC limitations on the relevant occupational base. (*Id*.)

Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and her revised RFC, the ALJ determined at step five of the sequential analysis that there are other jobs in significant numbers in the national economy that Plaintiff can perform, including: "copy

examiner*"* (DOT #979.687-026), an unskilled job that is generally performed at the sedentary exertional level, with approximately 14,000 positions in the national economy; "document preparer" (DOT #249.587-018), an unskilled job that is generally performed at the sedentary exertional level, with approximately 21,000 positions in the national economy; and "touch up inspector" (DOT #726.684-110), an unskilled job that is generally performed at the sedentary exertional level, with approximately 21,000 positions in the national economy. (R. 702.) The ALJ concluded on these grounds that Plaintiff is not disabled. (R. 702-03.)

### 3. Administrative and Judicial Appeals

Plaintiff appealed the 2023 Decision with a list of exceptions on January 18, 2024. (R. 1023.) The Appeals Council denied Plaintiff's request for review of that decision on June 30, 2025. (R. 669-672.) In doing so, the Appeals Council explicitly considered and rejected Plaintiff's challenge to the 2023 Decision based on the ALJ's omission of a one-to-two step limitation from her RFC, explaining:

> [Y]ou note that in the original decision dated January 20, 2021 the Administrative Law Judge limited the claimant to simple 1-2 step instructions [R. 791]. You correctly point out the current decision only limits the claimant to simple tasks. You argue this change amounts to finding that the claimant's mental abilities improved in the time between the two decisions. This is without merit for two reasons. First, while the two limitations appear slightly different, it is not clear that this was intended to or does amount to a finding of medical improvement. Second, the Administrative Law Judge adequately supported the finding limiting the claimant to simple tasks and you have presented no evidence to contradict this finding (see particularly [the 2023 Decision], page 9).

(R. 669.)

Because the Appeals Council denied Plaintiff's request for review, the 2023 Decision is the Commissioner's final decision following remand. (*See* R. 670.) This matter is now before the Court on Plaintiff's request for judicial review of that decision.

**DISCUSSION**

### I.   Standard of Review

The Court's review is limited to determining whether the ALJ's Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding the ALJ failed to create a "logical bridge" between

9

the evidence and her conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.     Analysis

### A.     Appeals Council Remand

Plaintiff argues the 2023 Decision was legally erroneous because the ALJ failed to comply with the Appeals Council's directive.  (ECF No. 13 at 13.)  She contends the Appeals Council's remand order required her to address how the one-to-two step RFC limitation established in the 2021 Decision affected whether she could perform the three representative occupations identified in the 2023 Decision.

Though not raised by either party, the Court first must address whether it has jurisdiction to review whether the ALJ complied with the Appeals Council's remand order.  *See In re McCormick*, 812 F.3d 659, 661 (8th Cir. 2016) ("[W]e have an independent obligation to examine our jurisdiction and must address any jurisdictional problems we perceive even if the issue has not been raised by the parties.") (quoting *In re M&S Grading, Inc.,* 526 F.3d 363, 367 (8th Cir. 2008)). 42 U.S.C. § 405(g) authorizes judicial review of "any final decision of the Commissioner ... made after a hearing."  *Efinchuk v. Astrue*, 480 F.3d 846, 848 (8th Cir. 2007) (quoting *Mason v. Barnhart,* 406 F.3d 962, 964 (8th Cir.2005)).  But the Eighth Circuit has not yet issued conclusive guidance on whether compliance with an SSA Appeals Council remand order is subject to judicial review.

A few courts have held that an ALJ's alleged failure to comply with the Appeals Council's directions on remand is a reviewable issue.  *See Godbey v. Colvin*, No. 1:13-cv-00167 (HBB), 2014 WL 4437647 (W.D. Ky. Sept. 9, 2014); *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 229 (E.D.N.Y. August 28, 2014); *Salvati v. Astrue*, No. 3:08-cv-494, 2010 WL 546490, at *7 (E.D. Tenn. Feb.

10, 2010).  However, courts in this District and others in the Eighth Circuit have concluded the question of whether an ALJ complied with directives in the Appeals Council's remand order is not subject to judicial review.  *See Jason M.G. v. O'Malley*, No. 23-cv-84 (JFD), 2024 WL 1095915, at *5 (D. Minn. Mar. 13, 2024) ("Title 42 U.S.C. § 405(g) authorizes judicial review only to determine whether substantial evidence supports the Commissioner's factual findings and whether the ALJ committed an error of law."); *Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) ("Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review."); *King v. Berryhill*, No. 5:16-cv-00079 (SWW/JTR), 2017 WL 1095087, at *2 (E.D. Ark. Feb. 24, 2017) (concluding that an ALJ's failure to comply with the Appeals Council's remand order was "an internal agency issue that became moot when the Appeals Council later *declined* to review the ALJ's ... decision" (emphasis in original)), *report and recommendation adopted*, 2017 WL 1100432 (E.D. Ark. Mar. 22, 2017); *see also Poyck v. Astrue*, 414 Fed. Appx. 859, 860–61 (7th Cir. 2011); *Dishman v. Astrue*, No. 4:08-cv-58, 2009 WL 2823653, at *11 (E.D. Tenn. Aug. 27, 2009).

The Court finds the argument against jurisdiction is more persuasive, particularly in cases such as this one.  Here, the Appeals Council explicitly considered whether the ALJ improperly failed to carry out its directives and rejected Plaintiff's argument.  The Appeals Council is in the best position to interpret its own order, and this Court should not attempt to second-guess it.  *See Sanders v. Astrue*, No. 4:11-cv-1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) ("The issue [of] whether an ALJ complied with a remand order evaporates when the Appeals

11

Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order."), *report and recommendation adopted*, 2013 WL 1281998 (E.D. Mo. Mar. 27, 2013).  The Court thus aligns with the other courts in this circuit and concludes that it lacks jurisdiction to consider Plaintiff's challenge to the ALJ's compliance with the Appeals Council's remand order.[5] The Court therefore recommends that Plaintiff's request for relief be denied.

## B.      Vocational Expert Testimony

Plaintiff argues the 2023 Decision was erroneous because she relied on flawed testimony from the VE at step five to identify alternative jobs Plaintiff can perform.  (ECF No. 13 at 15.) Plaintiff specifically contends the jobs of "document preparer" and "copy examiner" are obsolete and thus are not reliable examples of jobs in the national economy that Plaintiff can perform.  (*Id.* at 15-17.)  Defendant contends the ALJ's reliance on the document preparer and copy examiner occupations was not erroneous because the VE's testimony regarding those occupations was sufficient, and Plaintiff's attorney did not challenge the VE's testimony on the ground that those jobs are obsolete.  (ECF No. 17 at 13.)  Defendant further contends that even discounting the document preparer and copy examiner jobs, the remaining 21,000 touch up inspector jobs meet the threshold for a "significant number of jobs in the national economy."  (ECF No. 17 at 13-14.)

---

[5] In any event, the 2023 Decision is consistent with the Court's own interpretation of the Appeal's Council's order.  The Appeals Council directed the ALJ to obtain supplemental evidence from a VE and propound hypothetical questions that "reflect the specific capacity/limitations established by *the record as a whole*" to identify examples of any jobs consistent with those limitations and the DOT.  (R. 853, emphasis added.)  That directive necessarily required the ALJ to reopen the record and reassess Plaintiff's RFC based on the *entire* record.  Plaintiff appropriately took advantage of the opportunity to proffer new evidence in her favor, but she cannot have it both ways:  She cannot, on the one hand, expect the ALJ to consider her new evidence, and on the other hand expect the ALJ to assess the exact same RFC, which was based solely on the evidence in the record of the 2021 Decision.

When there is a conflict between a VE's testimony and the DOT, the ALJ has an affirmative duty to: (1.) resolve the conflict before relying on the VE evidence; and (2.) "explain the resolution of the conflict irrespective of how the conflict was identified."  SSR 00-4P, 2000 WL 1898704, at *2-4 (Dec. 4, 2000); *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014).[6]  "The ALJ is not absolved of this duty merely because the VE responds 'yes' when asked if [his] testimony is consistent with the DOT."  *Moore*, 769 F.3d at 990.

### 1.     Document Preparer

Plaintiff argues that the job of "document preparer" as listed in the DOT (DOT# 249.587-018) is now obsolete.  Plaintiff points to a June 24, 2024 Press Release from the Social Security Administration to support her argument.  (ECF No. 13 at 15, citing Social Security Administration, *Social Security Updates Occupations List Used in Disability Evaluation Process* (June 24, 2024), https://www.ssa.gov/news/en/press/releases/2024-06-24.html ("Press Release")).   In part, the Press Release states that, "[t]he agency … identified 13 DOT occupations where federal courts have questioned supporting evidence of a 'not disabled' finding. The agency is implementing additional evidence requirements for these occupations."  Document preparer is one of the 13 DOT occupations referenced in the Press Release.  Guidance referenced in the Press Release, initially released on June 22, 2024 and updated on January 6, 2025, establishes heightened evidentiary and articulation requirements for certain occupations because the descriptions of the occupations in the DOT "may refer to job materials or processes that have been replaced by more modern materials

---

[6] The Social Security Administration rescinded SSR 00-4p on December 6, 2024, explaining that though the Administration will continue to rely on the DOT as a valid and reliable source of information, ALJs are no longer required to identify and resolve conflicts between occupational information provided by VEs and information in the DOT.  SSR 24-3P, 2024 WL 5256890, at *2 (Dec. 6, 2024).  However, SSR 00-4p still applies in this case because it was not rescinded until after the ALJ issued the Decision on December 20, 2023 (R. 679-703).  *See* SSR 24-3P, 2024 WL at *2 n.1.

or processes."  *See* EM-24027 REV, Social Security Administration, *Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (Jan. 6, 2025) ("Guidance").  Under this Guidance, an ALJ may not cite the job of "document preparer" to support a determination that a claimant is not disabled without additional evidence from a VE showing that, as the occupation is currently performed: (1.) "its requirements are consistent with the individual's RFC"; and (2.) "it exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant."  *Id.*

During Plaintiff's hearing, the ALJ asked the VE if the representative jobs he identified were consistent with the descriptions of those jobs in the DOT and the "SCO" (Selected Characteristics of Occupations Defined in the Revised DOT).  (R. 726.)  In response, the VE stated that he relied on his own experience with respect to absenteeism, off-task time, use of a cane, climbing, social interaction and occasional change.  (R. 726-27.)  The VE did not state that he relied on his own experience with respect to the potential obsolescence of any representative jobs he identified, nor did the Plaintiff's attorney question him on that topic.

However, Plaintiff's argument that the ALJ was required to follow the Press Release and (presumably) the Guidance by eliciting testimony from the VE regarding the obsolescence of the document preparer occupation overlooks the relevant timeline.  Neither the Press Release nor the Guidance was published at the time of the evidentiary hearings on July 13, 2023 and September 7, 2023, or by the date of the Decision on December 20, 2023.  (R. 741, 714, and 703.)  The ALJ cannot have erred by failing to follow a Press Release or Guidance that did not yet exist.

To the extent Plaintiff argues the ALJ should have found the "document preparer" job was obsolete even without the Press Release or the Guidance, that argument is similarly unconvincing. The job of "document preparer" is not fundamentally obsolete, such that an ALJ can never find it

exists in significant numbers. The Press Release and the Guidance merely pose additional evidentiary requirements when an ALJ relies on the "document preparer" job. Though the Press Release advises that approximately 114 occupations are wholly obsolete and cannot support a denial of benefits, document preparer is not one of those jobs. *See* EM-24026 REV, Social Security Administration, *Guidance Isolated Occupations We Will Not Use to Support a "Not Disabled" Finding at Step Five of the Sequential Evaluation Process* (June 22, 2024) https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM. Instead, the Press Release includes "document preparer" on a smaller list of 13 occupations requiring additional evidence. *See* Press Release. And as the Guidance makes clear, such evidence may be support reliance on these jobs by addressing "materials or processes that have been replaced by more modern materials or processes." *See* Guidance. Thus, neither the Press Release nor the Guidance constitutes a determination that the "document preparer" job is obsolete.

The undersigned Magistrate Judge and other judges have held reliance on the document preparer occupation as a non-obsolete job to be reasonable based on the records presented in other cases. *Elizabeth M. v. Bisignano*, No. 25-cv-2550 (DJF), 2026 WL 686783, at *4 (D. Minn. Mar. 11, 2026) (finding ALJ's reliance on the document preparer job reasonable on the basis of VE testimony that document preparer job utilizes more current technology in the current labor market than described in the original DOT); *Ford v. Berryhill*, No. 4:17-cv-00328 (JLH), 2018 WL 2024620, at *1 (E.D. Ark. May 1, 2018) (finding VE's unchallenged testimony that claimant could perform document preparer role and that 102,000 document preparer jobs existed in the national economy, without specific testimony as to the document preparer role's obsolescence, to be substantial evidence that ALJ could rely upon); *see also Jolene J.-D. v. O'Malley*, No. 23-cv-2297 (JMB/DLM), 2024 WL 3488001, at *2 n.3 (D. Minn. July 1, 2024), *report and recommendation*

*adopted*, 2024 WL 3470786 (D. Minn. July 19, 2024) (noting the VE's testimony that "the occupation of a document preparation clerk has changed since the DOT's last update in 1991, shrinking to far fewer available positions because documents are now more easily moved to electronic databases rather than painstakingly entered into microfiche programs", but finding those more limited positions to still contribute to be a "sufficient [number of] jobs available in the national economy").

Though Plaintiff cites several decisions to support her claim that the document preparer position is obsolete (*see* ECF No. 13 at 16), the Court must review the 2023 Decision based on the record before it in *this* case.  Here, the VE testified that there are approximately 21,000 document preparer jobs available in the national economy.  (R. 725.)  Plaintiff raised no objection to the VE's testimony during the hearing or at any point with either the ALJ or the Appeals Council.  Because she proffered no contradictory evidence from any source, the record is devoid of facts from which the Court might infer the VE's estimate is inaccurate.  And because the Guidance requiring ALJs to elicit additional evidence related to this job had not yet been issued, the ALJ's reliance on the VE's testimony without such evidence was neither inconsistent with the DOT nor otherwise erroneous under applicable law.  For these reasons, the Court concludes the ALJ did not err in finding that there are approximately 21,000 document preparer jobs existing in the national economy.

### 2. Copy Examiner

Plaintiff argues the role of "copy examiner" is also obsolete.  In support of this proposition, Plaintiff cites to a Wikipedia article, which states that phototypesetting, which copy examiners review, "has been made obsolete by the popularity of the personal computer and desktop publishing which gave rise to digital typesetting."  (ECF No. 13 at 16-17, citing

16

https://en.wikipedia.org/wiki/Phototypesetting.)   But Plaintiff cites to no guidance or other publication showing the SSA considers the copy examiner occupation obsolete, nor did she enter any evidence into the administrative record supporting such a conclusion.  During the hearing, the VE testified that he relied on the DOT and his own "work experience" to determine that the recommended jobs, including copy examiner, were available to Plaintiff.  (R. 726.)  The SSA continues to "recognize the DOT as a valid and reliable source of occupational information" to make a disability determination.  SSR 24-3p.  The DOT also appears on the list of publications ALJs can use to take administrative notice of reliable job information, while Wikipedia does not. *See* C.F.R. § 404.1566(d)(1)-(5).  Further, "VEs may provide evidence based on their professional experience" in offering estimates of the number of jobs in the national economy.  SSR 24-3p.  It would be inappropriate for the Court to overturn the ALJ's decision, which relied on the DOT and the VE's expertise, on the basis of an out-of-record Wikipedia article.  *See Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) ("In the context of judicial review of a decision of the Commissioner regarding SSI disability benefits, evidence outside the administrative record generally is precluded from consideration by the court.")  For these reasons, the Court finds the ALJ did not err in relying on VE testimony that the copy examiner occupation exists in significant numbers in the national economy.

### 3.      Number of Jobs in the National Economy

For the foregoing reasons, the Court affirms the ALJ's findings with respect to all three recommended jobs.  However, for the sake of completeness, the Court will also address Plaintiff's argument that, assuming the document preparer and copy examiner occupations are obsolete, the remaining occupation of "touch up inspector" does not represent a sufficient number of jobs in the national economy that Plaintiff can perform.  The VE estimated that there are 21,000 "touch up inspector" jobs in the national economy.  (R. 702.)  The Court finds no reasonable basis to question

17

his estimate with respect to this position.  Therefore, excluding the document preparer and copy examiner jobs, the record reflects a total of 21,000 representative jobs in the national economy that Plaintiff can perform.  Though there is no bright line rule, this total is consistent with the number of jobs the Court has previously found sufficient to establish a significant number jobs in the national economy at step five of the sequential analysis.  *See, e.g.*, *Shari B. v. Kijakazi*, Case No. 22-cv-1539 (DJF), 2023 WL 6130679, *7-9 (D. Minn. Sept. 19, 2023) (surveying cases and concluding that many courts draw the line between "significant" and "insignificant" at around 20,000 jobs in the national economy); *see also Tanya S. v. O'Malley*, No. 23-cv-1416 (ECW), 2024 WL 3858155, at *12 (D. Minn. Aug. 19, 2024) (quoting *Shari B.*, 2023 WL at *8, and finding 22,000 jobs significant); *Nicolas C. J. v. Kijakazi*, 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *25 (D. Minn. Jan. 20, 2022) (finding 20,500 jobs nationally to be significant), *report and recommendation adopted*, 2022 WL 807605 (D. Minn. Mar. 17, 2022).

The Court thus finds there is a significant number of representative jobs in the national economy that Plaintiff is able to perform, even discounting the document preparer and copy examiner occupations.  Based on that finding, and for all the foregoing reasons, the Court concludes the ALJ did not err in finding Plaintiff is not disabled and that the ALJ's determination is supported by substantial evidence in the record as a whole.  The Court recommends Plaintiff's claim be denied on these grounds.

## RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Request for Relief (ECF No. 13) be **DENIED**;

2. Defendant's Request for Relief (ECF No. 17) be **GRANTED**; and

3. This action be **DISMISSED WITH PREJUDICE**.

Dated: May 8, 2026                    *s/ Dulce J. Foster*
                                      DULCE J. FOSTER
                                      United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).